In re **EAGLE–PICHER INDUSTRIES, INC., et al., Debtors.**

Bankruptcy Nos. 1–91–00100.

United States Bankruptcy Court, S.D. Ohio, W.D.

March 4, 1992.

Edmund J. Adams, Cincinnati, Ohio, for debtors.

Robert S. Balantzow, Cleveland, Ohio, for future claimants.

Carolyn J. Buller, Cleveland, Ohio, for Unsecured Creditors' Committee.

Kevin E. Irwin, Cincinnati, Ohio, for Injury Claimants' Committee.

Irving Harris, Cincinnati, Ohio, for Equity Sec. Holders' Committee.

## ORDER ON MOTION OF FUTURE CLAIMS REPRESENTATIVE FOR EMPLOYMENT OF BURKE ROSEN & ASSOCIATES AND OBJECTION THERETO

BURTON PERLMAN, Chief Judge.

These consolidated Chapter 11 cases will call for a plan dealing with the rights of persons who were exposed to asbestos products which originated with debtors. Players in the cases include an official creditors' committee entitled Injury Claimants Committee ("ICC"), whose constituency is present claimants, that is, claimants with claims arising prior to the filing date of the bankruptcy cases. Another player is James J. McMonagle, the legal representative for future personal injury and property damage claimants (the "Representative"). His constituency consists of those whose claims arise subsequent to the filing date. Critical to the forward movement of these cases in reorganization is valuation of present claims and also of future claims.

The Representative now moves for an order authorizing him to employ Burke Rosen & Associates ("BRA") as a consultant. The field of expertise of BRA is economics. The firm has extensive experience in the valuation, assessment and estimation of personal injury and property damage claims in mass tort cases. The Representative says that it is critical for him to have the assistance of experts who have substantial experience in claims valuation, future liability assessment and evaluation of systems for satisfying claims.

The ICC has filed an objection to the retention of BRA. Prior to the commencement of these bankruptcy cases, legal proceedings occurred before U.S. District Judge Jack B. Weinstein, the thrust of which were to dispose of the multitude of asbestos claims against Eagle–Picher Industries then pending in the Eastern and Southern Districts of New York, which cases had been consolidated. Judge Weinstein referred the case to a special master who recommended that the District Court certify a limited fund class action pursuant to F.R.Civ.P. 23(b)(1)(B). There then followed intense efforts at the instigation of the court for a settlement of all claims. In the course of settlement discussions, Judge Weinstein appointed Stanley M. Chesley as an additional counsel representing present asbestos claimants. Chesley hired BRA to advise him. Chesley entered into a settlement agreement on behalf of his constituency and Judge Weinstein held hearings on the proposed settlement. Judge Weinstein then had before him, among other evidence, the report which BRA had provided to Chesley. The present bankruptcy cases were filed before any definitive action occurred in the New York court.

It is the position of the ICC that the prior services of BRA to a representative of present claimants in the New York pro-

ceedings, present claimants being the constituency now represented by the ICC, should preclude BRA from now rendering services to the Representative, whose constituency is future claimants, a class adverse for present purposes to that of present claimants. The reason for such preclusion, says the ICC, is that such service by BRA would represent a conflict of interest.

A hearing was held on the present application and objection, in the course of which Harvey Rosen of BRA testified. He told of his involvement in the New York proceeding. He said that he had been contacted by Chesley, and asked to analyze data with respect to Eagle–Picher with regard to whether a proposed settlement was fair. Because Chesley required a response in a very short time frame, nine days, Rosen told Chesley that there was insufficient time to do an analysis of data. Chesley then asked if he could react to information provided by others, accepting the accuracy of it. He agreed to do so and proceeded on this basis. The information provided to him was provided to all experts in the case, and had been generated by Chemical Bank. On the basis of his review of that data, he reported to Chesley that it was likely that bankruptcy would occur in the absence of the settlement, but if the settlement were adopted, there was a likelihood that bankruptcy could be avoided. Rosen testified that he had received no confidential information, and had had no contact with any actual claimant or the attorney for any actual claimant.

▆ In support of its objection, the ICC argues that the interests of present and future claimants are adverse, and we think that that is so. This, however, is not the heart of their objection. The heart, the ICC says, is to be found in 11 U.S.C. § 327(a):

> § 327. **Employment of professional persons**
>
> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

The ICC says that this section of the Code precludes the proposed service by BRA because BRA is not a disinterested person.

But in § 327(a) Congress did not deal generally with the subject of who may serve in a bankruptcy case as a professional person. Congress there dealt specifically with employment by *the trustee* (or its equivalent in a Chapter 11 setting, the debtor-in-possession) of professional persons. No authority has been offered to suggest that this section applies as well to the employment of professional persons by entities other than the trustee. Section 327, therefore, is inapplicable to the present situation.

▆ This conclusion is not the end of the matter, for notwithstanding the inapplicability of § 327(a), it cannot be said that the right of a party other than the trustee in a bankruptcy case to employ a professional is without limit. The starting point in a proper analysis ought to be, that generally a party should have the right to employ a professional of its choice, one in which it has confidence, and with whom it is comfortable. This is the right of any party in its choice of counsel, *see e.g., Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564 (Fed.Cir.1984), and we see no reason why it should not be equally applicable with respect to the employment of professionals other than attorneys. *Panduit,* as well, suggests, however, that there are limits to that freedom.

It is not unfair for us to cast the position of the ICC as asserting that a conflict of interest is such a limit, and it alleges that there is a conflict of interest here. The ICC says on this score that "it reasonably can be assumed that while advising Chesley, Burke Rosen & Associates became privy to confidential information."

There is case authority setting standards for non-lawyers when they propose to render services to a party, having previously rendered services to an adverse party. A

leading case is *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271 (S.D.Ohio 1988). In that case, a suit for personal injury against a manufacturer of a baseball helmet against the manufacturer of the helmets for injury sustained while wearing such a helmet, the defendant manufacturer sought to disqualify plaintiff's expert witness, Dr. Goldsmith. Prior to the subject litigation, the manufacturer had discussed with Dr. Goldsmith a program for the testing of its products, such discussions extending over a substantial period of time. Subsequently, plaintiff retained Dr. Goldsmith, who was prepared to testify that the helmet in question was inadequate to protect a wearer such as the plaintiff. *Id.* at 276.

In denying disqualification, the court concluded, first, that it did have the power to disqualify an expert witness. It then stated the test it was applying as:

> Consequently, I believe the proper focus in such situations is to determine, first, whether the attorney or client acted reasonably in assuming that a confidential or fiduciary relationship of some sort existed and, if so, whether the relationship developed into a matter sufficiently substantial to make disqualification or some other judicial remedy appropriate. Stating each proposition negatively, if any disclosures of privileged or confidential material were undertaken without a reasonable expectation that they would be so maintained (so that, in effect, any confidentiality or privilege relating to the matters communicated was waived), or if, despite the existence of a relationship conducive to such disclosures, no disclosures of any significance were made, it would seem inappropriate for the court to dictate to the expert or his new employer that his participation in the case be limited or eliminated.

*Paul* at 278.

Disqualification of the expert was denied. In a like case, *Great Lakes Dredge & Dock Co. v. Harnischfeger Corp.*, 734 F.Supp. 334, 339 (N.D.Ill.1990), the court, relying squarely on the *Paul* case, reached the same result. *See also Viskase Corp. v.*

*W.R. Grace & Co.—Conn.*, 1992 WL 13679 (N.D.Ill. Jan. 24, 1992) (refusing to disqualify patent expert because expert lacked access to confidential information of objecting party). We agree with the reasoning of these cases.

■ We extract from these cases the proposition that it would be inappropriate to permit employment of a consultant by a party to a case, over the objection of an adverse party to whom the consultant had earlier rendered services, if it can be shown that the consultant actually obtained confidential information in its earlier work for the adverse party. While the ICC here asserts that BRA must have obtained confidential information in its earlier work for present claimants in the earlier New York case, the evidence before us conclusively establishes that that is not so. The only information given BRA was information available to everyone in the case, and BRA had no contact with any individual asbestos claimant or his or her attorney. Further, BRA in the earlier case was asked to render an opinion as to the probability of bankruptcy in the absence or presence of a settlement there proposed. The filing of bankruptcy cases having now actually occurred, it cannot be said that the services to be rendered by BRA to the Representative are pertinent to the services it undertook in the New York court.

The motion of the future claims representative for employment of Burke Rosen & Associates is granted.

So Ordered.